IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G.,<br>  PLAINTIFF, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 4:24-CV-1133-Y-BK |
| COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br>  DEFENDANT. | §<br>§<br>§<br>§ | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Doc. 8, Plaintiff's appeal of the denial of Plaintiff's application for Social Security disability benefits, Doc. 1, is before the undersigned United States magistrate judge for findings and a recommended disposition.  For the reasons outlined here, the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act").  Doc. 1.

In December 2021, Plaintiff filed for DIB alleging a period of disability beginning in September 2019.  Doc. 9-1 at 226.  His claims were denied at all administrative levels.  Plaintiff now appeals to this Court under 42 U.S.C. § 405(g).  Doc. 1.

**B. Factual History**

Plaintiff was 48 years old at the alleged onset of his disability and had at least a high school education.  Doc. 9-1 at 56.  Plaintiff has past relevant work as a service mechanic and corrections officer.  Doc. 9-1 at 56.  Plaintiff claimed he suffers from Bell's Palsy, hip issues, vision loss, speech issues, dyslipidemia, GERD, obesity, arthritis, HTN, right knee injury, left knee injury, and anxiety.  Doc. 9-1 at 104.

Plaintiff's relevant medical history, dating from 2019 through 2023, reveals a diagnosis of Bell's Palsy.  Doc. 9-8 at 26.  In 2023, Plaintiff received an epidural steroid injection due to his lumbosacral radiculitis and lumbar spondylosis.  Doc. 9-10 at 446-48.  In 2022 Plaintiff reported panic attacks and was prescribed medication to treat them.  Doc. 9-8 at 2-8.

**C. Medical Opinion Evidence**

In 2022, State Agency Medical Consultant ("SAMC") Dr. Laurence Ligon determined at the initial level that Plaintiff could perform work at a medium exertion level.  Doc. 9-1 at 101.  On reconsideration, however, SAMC Dr. Jeanine Kwun concluded Plaintiff could only perform light work. Doc. 9-1 at 114.

In 2023, State Agency psychologist Dr. James Brown, Ph.D., concluded that Plaintiff had an anxiety disorder and was moderately limited in his ability to interact with others, concentrate, persist or maintain pace, and adapt or manage oneself.  Doc. 9-1 at 109.   Dr. Brown opined that Plaintiff would be moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and work week, interacting appropriately with the public, and accepting instructions and responding

appropriately to criticism from supervisors, and responding appropriately to changes.  Doc. 113-14.

In 2022, Dr. Alan Pang, M.D., performed a physical consultative examination on behalf of the State Agency and noted Plaintiff's history of bilateral knee problems with multiple surgeries.  Doc. 9-6 at 49-54.  Dr. Pang also noted swelling of both Plaintiff's knees, and that Plaintiff could not squat and rise, had difficulty with heel and toe walking, and could not hop.  Doc. 9-6 at 49-54.  Dr. Pang further opined that Plaintiff had no limitations in sitting, standing, or walking and did not need an assistive device for short distance, although he did need a cane for longer distances or uneven terrain.  Doc. 9-6 at 53.

In 2023, Dr. Addison Gradel, EdD, conducted a psychological consultative examination on behalf of the State Agency. Doc. 9-10 at 295-98.  Dr. Gradel noted that Plaintiff reported speech issues from Bell's Palsy.  Doc. 9-10 at 295.  Dr. Gradel opined that Plaintiff had a somatic symptom disorder, insomnia disorder, and a depressive disorder with anxious distress.  Doc. 9-10 at 297-98.

**D. Plaintiff's Testimony**

At the 2024 administrative hearing, Plaintiff testified that he stopped working primarily because of his knees and had lower back pain and recurring episodes of Bell's Palsy, which affects his vision and ability to speak.  Doc. 9-1 at 70-71.  Plaintiff also testified that he uses a cane to walk, which helps him do things like get in and out of a vehicle and up and down on curbs. Doc. 9-1 at 71.  Plaintiff stated he drives, but it is "not comfortable" and getting in and out of the car or driving over bumps in the road worsens his pain.  Doc. 9-1 at 72.  Plaintiff testified that he can sit for 15 to 20 minutes before needing to take a break and often shifts

positions due to lower back and hip pain.  Doc. 9-1 at 74.  Plaintiff estimated he could sit for a total of about four hours a day, walk one block, and stand for approximately 15 minutes at a time.  Doc. 9-1 at 76.  Plaintiff also testified that he has a dry eye condition, requiring the constant use of eye drops, which is related to his Bell's Palsy and affects the muscles around his nose—sometimes causing him difficulty breathing and headaches.  Doc. 9-1 at 77.

Plaintiff stated he had anxiety and depression symptoms, which affected his ability to concentrate and complete tasks, and that he had panic symptoms at times, which occurred during tasks like spending time with his grandchildren or having conversations, and that required him to stop and take a break.  Doc. 9-1 at 79-81.  Plaintiff further testified that he needed help with household tasks, such as laundry, making the bed, picking up things from the floor, and putting on his socks and shoes.  Doc. 9-1 at 80-81.  Plaintiff also stated he had a modified toilet to help him get up and down, and could not drive long distances without taking breaks, crawl, or sit on a chair for long periods, and that he had difficulty communicating with others due to his Bell's Palsy.  Doc. 9-1 at 82-83

### E. Vocational Expert Testimony

At the administrative hearing, a vocational expert ("VE") testified that someone with Plaintiff's age, education, work experience, and the ALJ's determined RFC could perform other work in the national economy as a document preparer, final assembler, and addressor.  Doc. 9-1 at 87-88.  The VE testified that availability of the work would not be eroded if the individual was limited to frequent interactions with coworkers and supervisors and occasional interaction with the public.  Doc. 9-1 at 88.  However, the VE further testified that work would be precluded if

the individual was off task 15 percent of the workday, absent for all or part of three workdays a month, or needed three unscheduled ten-minute breaks in a workday.  Doc. 9-1 at 89.

**F. The ALJ's Findings**

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled.  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and had not engaged in substantial gainful activity since September 10, 2019.  Doc. 9-1 at 48-49.  At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative joint disease of the bilateral knees; hip bursitis; arthritis; Bell's palsy, vision loss, speech issues, dyslipidemia, gastroesophageal reflux disease, hypertension, obesity, and anxiety.  Doc. 9-1 at 49.  The ALJ, however, found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment.  Doc. 9-1 at 49.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[1] to perform

> sedentary work as defined in 20 CFR 404.1567(c) except with the following limitations: can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, per the SCO; occasionally stoop, kneel, crouch, and crawl; can frequently reach overhead with the bilateral upper extremities; should avoid loud and very loud noise (levels 4 and 5); no more than frequent (occasional) verbal communication required as part of the job; can understand, remember, and carry out detailed, but not complex, instructions; can perform jobs with no more than frequent near and far visual acuity; can frequently interact with coworkers and supervisors and occasionally interact with the public.  He must be allowed to use hand-held assistive device, such as a cane, for ambulation

---

[1] The RFC is "the most [a claimant] can still do despite [the claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

Doc. 9-1 at 51.

At step four, the ALJ found that Plaintiff did not have the RFC to perform his past work. Doc. 9-1 at 55.   At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform.  Doc. 9-1 at 56.  The ALJ thus concluded that Plaintiff was not disabled under the Act.  Doc. 9-1 at 57.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do his past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work.  *Webster v. Kijakazi,* *19 F.4th 715, 718 (5th Cir. 2021)* (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  If the claimant meets his burden, the burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue, 706 F.3d 600, 602 (5th Cir. 2012).* "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

6

sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

The RFC assessment is based on "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ as factfinder has the sole responsibility for weighing the evidence and determining the relative weight to be given it.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

## III. ANALYSIS

### A. Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. Specifically, Plaintiff contends "(a) the RFC for sustained "Sedentary" work does not address Plaintiff's need to change positions throughout the day, (b) the RFC does not address Plaintiff's

off-task limitations, and (c) the RFC fails to adequately address Plaintiff's mental limitation." Doc. 12 at 1.  Upon review, the Court finds that Plaintiff's arguments lack merit.

The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  When evaluating physical limitations, the ALJ will "first assess the nature and extent of [Plaintiff's] physical limitations and then determine [Plaintiff's] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(b).  The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010).  There is no requirement that the ALJ adopt a specific physician's assessment when determining a Plaintiff's RFC. *Miller*, 2023 WL 234773, at *4.  Nevertheless, "the ALJ cannot completely disregard medical testimony in making an RFC determination . . ." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022).

Although the Plaintiff's "RFC is ultimately the ALJ's determination," there must be a "foundational basis" for the determination. *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (emphasis removed).  But "the ALJ is not required to have a medical opinion that matches his RFC determination[,]" "so long as substantial evidence supports the determination." *Myers v. Saul*, No. SA-20-CV-00445, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021).  Accordingly, an ALJ's RFC determination is improperly based on his lay opinion when substantial evidence does not support the RFC.  *See Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).

Here, a review of the record reveals substantial evidence supports the ALJ's formulation of Plaintiff's RFC because the ALJ properly considered the medical opinions' persuasiveness and

8

incorporated these opinions into Plaintiff's RFC in accordance with 20 C.F.R. § 404.1520c. 20 C.F.R. § 404.1520c is a relatively new rule regarding RFC determinations that governs all claims filed on or after March 27, 2017. Because Plaintiff filed his claim in 2021, the new rule applies. This rule addresses how the Commissioner must consider and articulate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity. Furthermore, the rule eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. See id. § 404.1527(c)(2).

The current rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. Id. § 404.1520c(a). Instead, the Commissioner must consider the persuasiveness of all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are "supportability" and "consistency." Id. The Commissioner must articulate how persuasive he finds each of the opinions in the record. Id. § 404.1520c(b).

### 1. Plaintiff's need to change positions

Plaintiff argues that the ALJ erred because he did not include any limitations based on Plaintiff's alleged need to change positions throughout the day. Doc. 12 at 9. The Commissioner contends that, inter alia, medical expert opinion provided substantial evidence to support the ALJ's refusal to provide such limitation in Plaintiff's RFC. Doc. 13 at 6.

Here, the ALJ's RFC is supported by substantial evidence because the ALJ conducted a persuasiveness analysis for each medical opinion and incorporated this analysis into Plaintiff's

RFC.  The ALJ "properly evaluated all of the medical opinions in the record" in accordance with "Section 404.1520c's more flexible methodology for analyzing opinion evidence" and "exercised [her] discretion to resolve conflicts in the evidence and to assess the RFC based on all the relevant evidence in the record." 20 C.F.R. § 404.1520c.

For example, regarding the SAMCs, the ALJ found the medical consultants' opinions "unpersuasive" or "mostly persuasive" because the record supported *greater* exertional limitations.  Doc. 9-1 at 54-55.  The ALJ's articulation of a *more restrictive* RFC than the findings expressed by the medical experts demonstrates that the ALJ's RFC is substantially supported in the record.  *See Fleming*, 2020 WL 4601669, at *9 (The fact that "these medical experts found Plaintiff to be capable of a [higher level of work] . . . is ultimately supportive of the ALJ's RFC determination."); *Stanley v. Comm'r of Soc. Sec.*, No. 4:22-CV-527, 2023 WL 2457534 (S.D. Tex. Mar. 10, 2023) (same); *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-CV-28, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (Ray, J.), *adopted by* 2022 WL 2972240 (N.D. Tex. July 26, 2022) (finding no error where the ALJ adopted more restrictions on claimant's activities than limitations determined by the SAMCs).  For these reasons, the Court finds that the RFC is supported by substantial evidence.

### 2.  *Plaintiff's need for breaks*

Plaintiff argues that the ALJ erred in failing to include restrictions in the RFC to accommodate Plaintiff's time off-task or need for extra breaks related to his anxiety, chronic pain, and Bell's Palsy.  Doc. 12 at 11.  Plaintiff further contends that the ALJ ignored Plaintiff's need to frequently take eye drops, Plaintiff's multiple panic attacks, and record evidence demonstrating that Plaintiff needed to change positions every 15 or 20 minutes.  Doc. 12 at 11.

Contrary to Plaintiff's argument, the record was essentially devoid of any information from which the ALJ could have determined that an off-task time limitation was required, and, if so, how much time off task was necessary. Instead, given the inconsistencies regarding the severity of Plaintiff's complaints, the ALJ reasonably concluded that no off-task time limitations were necessary. *See Cooper v. Kijakazi*, No. 4:22-CV-118, 2023 WL 2467880, at *2 (N.D. Miss. Mar. 10, 2023) (affirming the Commissioner's denial of benefits where the plaintiff received treatment for headaches but her examination findings were normal, she indicated that over-the-counter medications helped relieve her symptoms, and her complaints were only documented once in the record and not corroborated by any objective medical evidence).

Although Plaintiff maintains in his reply that the ALJ failed to adequately consider the evidence regarding his symptoms, substantial evidence, including the clinical findings and objective medical records, the opinions of three state agency consultants, Plaintiff's subjective statements regarding his symptoms and limitations, and his reports of his daily activities, support the ALJ's disability decision. *See Wren*, 925 F.2d at 126. While Plaintiff may disagree with the ALJ's conclusions, his arguments amount to nothing more than an invitation for the Court to reweigh the evidence and second-guess the ALJ's decision not to include an off-task limitation, which is not proper under the substantial evidence standard of review. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (providing that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination); *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *see also Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988);

11

*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  Accordingly, the Court finds no error in the ALJ's RFC decision not to include off-task time limitations in the RFC determination.

### 3. *Plaintiff's mental impairments*

Plaintiff also argues that the ALJ's RFC determination that Plaintiff "can understand, remember, and carry out detailed, but not complex, instructions" and "can frequently interact with coworkers and supervisors and occasionally interact with the public", Doc. 9-1 at 51, cannot be reconciled the moderate limitations in Plaintiff's ability to concentrate for extended periods and complete a normal workday and workweek.  Doc. 12 at 13.

Again, the ALJ's RFC findings do not need to "mirror a medical opinion." *Dominick S. v. Kijakazi*, No. 3:20-CV-3473, 2022 WL 2874705, at *2 (N.D. Tex. May 12, 2022) (Rutherford, J.), *adopted sub nom. by Simonetti v. Kijakazi*, ,2022 WL 2872490 (N.D. Tex. July 20, 2022); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("[T]here is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . ."). Here, both the ALJ and the SAMC concluded that Plaintiff had moderate limitation in concentration, persistence, or pace.  Doc. 9-1 at 50, 113.  Judges of this Court and other district courts in the Fifth Circuit have held that either an RFC limitation to "detailed but not complex" tasks *or* a limitation to "simple" tasks addresses such a moderate limitation.  *See, e.g., Westover v. Astrue*, No. 4:11–CV–816, 2012 WL 6553102, at *10 (N.D. Tex. Nov. 16, 2012) (Cureton, J.) ("the ALJ's hypothetical limitation to 'detailed but not complex instruction' indicates incorporation of [the plaintiff's moderate] impairment in

concentration, persistence, or pace."), *adopted by* 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012); *Mary C.R. v. Kijakazi*, No. 3:20-CV-286, 2021 WL 4476764, at *6-7 (N.D. Tex. Sept. 30, 2021) (Rutherford, J.) (collecting cases where understanding and carrying out only "detailed but not complex instructions" RFC finding accounted for a moderate limitation in concentrating, persisting, or maintaining pace); *Calvert v. Colvin*, No. EP-14-CV-404, 2016 WL 3906821, at *6 (W.D. Tex. July 14, 2016) ("the Court finds that the ALJ's mental RFC determination, that Plaintiff could perform work limited to understanding, remembering, and carrying out detailed but not complex instructions . . . is not contrary to the ALJ's . . . finding that Plaintiff was moderately limited in her ability to maintain concentration, persistence, or pace."); *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (per curiam) ("restrictions to . . . simple, one-to two-step instructions reflect that the ALJ reasonably incorporated [plaintiff's] moderate concentration, persistence, and pace limitations . . ."); *Hariman v. Comm'r, SSA*, No. 4:18-CV-377, 2019 WL 4727417, at *2 (E.D. Tex. Sept. 27, 2019) (finding that a limitation to "simple tasks and instructions" and "simple work related decisions" covered the plaintiff's moderate limitation in concentration, persistence, and pace); *Cornejo v. Colvin*, No. EP-11-CV-470, 2013 WL 2539710, at *6 (W.D. Tex. June 7, 2013) (stating that an RFC limitation to "perform[ing] simple tasks" is "an accommodation for [the plaintiff's] acknowledged moderate limitation in concentration, persistence, and pace"). The undersigned concurs here in concluding that while the ALJ did not use the exact same language as Dr. Kwun, the ALJ appears to have incorporated Dr. Kwun's findings into Plaintiff's RFC.

13

**B. Plaintiff's Subjective Complaints.**

Plaintiff also contends that the ALJ gave insufficient weight to his subjective complaints of pain. The ALJ found that Plaintiff's allegations regarding his physical and mental impairments were "weakened by inconsistencies between his complaints and the medical evidence."

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3p, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[2] First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *3-4. Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *See id.* at *4-5. The ALJ must consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. *See id.* at *5-7. The ALJ must also consider a

---

[2] Effective March 2017, the Social Security Administration issued SSR 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." *See* 2017 WL 5180304. It instructs ALJs to determine "the extent to which . . . symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Bell v. Kijakazi*, No. 3:22-CV-1190, 2023 WL 5836826, at *12 n.11 (N.D. Tex. July 14, 2023) (Ramirez, J.), *adopted by* 2023 WL 5835972 (N.D. Tex. Sept. 8, 2023) (citation omitted). While SSR 16-3p explicitly supersedes SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), "it is evident that the change brought about by SSR 16-3p was mostly semantic." *Id.* at *12 (citation omitted).

non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual uses or has used to relieve pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the ALJ must give specific reasons for making this determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in [the] outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Bell v. Kijakazi*, No. 3:22-CV-1190, 2023 WL 5836826, at *12 (N.D. Tex. July 14, 2023) (Ramirez, J.), *adopted by* 2023 WL 5835972 (N.D. Tex. Sept. 8, 2023) (citation omitted).

Moreover, the Court of Appeals for the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Additionally, the ALJ's evaluation of the claimant's subjective complaints is entitled to judicial deference. *See Carrier v.*

15

*Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's subjective complaints because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18; *see also Biestek*, 139 S. Ct. at 1157 (noting the presiding ALJ, "who has seen the hearing up close," deserves deference).

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints and symptoms based on a consideration of the entire case record. Doc. 9-1 at 51. She then considered Plaintiff's hearing testimony including that he had begun using a cane at some point between 2020 and 2022 of his own volition, and that he could sit for 15 to 20 minutes before needing to shift because of back and hip pain. Doc. 9-1 at 51-52. The ALJ also considered Plaintiff's testimony that he can only walk one block and only stand in place for 15 minutes. Doc. 9-1 at 52. The ALJ also noted that Plaintiff reported having severe eye pain since being diagnosed with Bell's Palsy and has difficulty moving and seeing. Doc. 9-1 at 52.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." Doc. 9-1 at 52. The ALJ also determined that as to Plaintiff allegations of back, hip, and knee pain, the "limitations are consistent with the history of multiple surgeries on both knees and more recent radiological studies of the hips showing degeneration and other impairments. However, additional limitation is not supported, as exams have yielded generally normal findings." Doc. 9-1 at 55.

The ALJ specifically held that Plaintiff's "Bell's palsy and associated symptoms could reasonably be expected to cause the limitations regarding speech and noise, as demonstrated by

16

ongoing vision and facial spasms.  However, the record indicates that [Plaintiff's] impairment is also successfully treated, at least to some degree, with medication, making any additional limitation unsupported." Doc. 9-1 at 55.  According to the ALJ, Plaintiff's "anxiety affects his ability to perform a number of tasks, but not more than described in the residual functional capacity, as exams showed the claimant was alert and had good eye contact and fluent speech. [Plaintiff's] mood was appropriate and the [Plaintiff] had clear thought processes.  [His] memory was normal and concentration was good.  [Plaintiff] was oriented to time, place, person and situation."

In addition to addressing the lack of consistency with the objective medical evidence, the ALJ also mentioned Plaintiff's report that he takes care of his grandchildren and dog, and that Plaintiff "attends to his personal care needs, prepares meals, cleans, does laundry, irons, picks up after the dog, throws out the trash, drives, shops, counts change, handles a savings account, uses a checkbook, watches television, and spends time with others" Doc. 9-1 at 52 (citing Doc. 9-1 at 265-67).

Based on the ALJ's written decision and the record, the Court concludes that the ALJ's evaluation of Plaintiff's subjective symptoms is supported by specific reasons that, in turn, are supported by the record.  Because the ALJ properly considered Plaintiff's symptoms under SSR 16-3p, remand is not warranted on this issue.

### C. The ALJ's Step Five Finding.

Plaintiff argues that the ALJ erred by failing to resolve two direct conflicts between the VE testimony and the DOT.  Doc. 12 at 18.  The DOT and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") contain a

17

comprehensive list of jobs throughout the United States with assessments for each. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 609 (E.D. Tex. 2009). Under SSR 00-4p, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs and information in the" DOT. 2000 WL 1898704, at *1 (S.S.A. 2000).

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). Therefore, unless a "direct and obvious conflict" exists between the VE's testimony and the DOT, the ALJ has met his burden. *See* SSR 00-4p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146 (when "direct and obvious conflict" exists between VE's testimony and the DOT, the ALJ must resolve conflict by determining whether VE's explanation is reasonable and thus more reliable than DOT); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-CV-651, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011) (If an indirect conflict "did not undergo adversarial development at administrative hearing, [VE] testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (citation omitted), *adopted by* 2011 WL 2669099 (N.D. Tex. July 6, 2011).

Under this metric, the Court must first determine whether a "direct and obvious" conflict exists. An apparent conflict may arise (1) when the VE's testimony regarding "the exertional or skill level required for a particular job is facially different from" that indicated in the DOT; or (2) when the VE's testimony creates a conflict between the ALJ's RFC determination and the DOT job description. *Carey*, 230 F.3d at 145-46. Indirect and implied conflicts occur under various

18

unique circumstances when VEs testify regarding an individual claimant's capabilities. *See id.* at 146.

Plaintiff argues that the RFC finding that he "can understand, remember, and carry out detailed, but not complex, instructions" and is limited to jobs involving "frequent near and far visual acuity," Doc. 9-1 at 51, directly conflicts with the document preparer and addresser jobs that the ALJ found that Plaintiff could perform. Doc. 12 at 18.

The DOT contains a scale known as the general educational development reasoning level ("Reasoning Level") which provides an "estimation of the general mental and psychological capabilities an individual needs to perform that job, ranked from a low of [R]easoning [L]evel 1 to a high of [R]easoning [L]evel 6." *David M. v. Kijakazi*, No. 3:22-CV-2166, 2023 WL 8007388, at *4 (N.D. Tex. Oct. 11, 2023) (citing DOT, App. C, 1991 WL 688702 (4th ed. 1991)), *adopted by* 2023 WL 8006408 (N.D. Tex. Nov. 17, 2023). The DOT classifies the job of document preparer as a semi-skilled job with a Reasoning Level of three. DOT No: 249.587-018 Further, the companion volume to the DOT, the Selected Characteristics of Occupations, or SCO, describes the occupation of addresser, DOT No. 209.587-010, 1991 WL 671797, as requiring constant near acuity.

Assuming *arguendo* that the identified jobs of and document preparer conflict with the DOT because they require reasoning levels 3 or higher and constant near acuity respectively, this proffered error would not warrant a reversal of the Commissioner's decision. VE Bowden identified one other job—final assembler—with 23,000 jobs in the national economy. "The Commissioner's burden at Step 5 of the sequential evaluation process described earlier is satisfied by showing the existence of only *one* job with a significant number of available

positions that the claimant can perform." *Gaspard v. Soc. Sec. Admin. Com'r,* 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) (citing *Evans v. Chater,* 55 F.3d 530, 532-33 (10th Cir. 1995)).

## IV. CONCLUSION

In sum, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on March 13, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).